# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| YOLANDA SANTOYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 6650 |
| | ) | Magistrate Judge Nan R. Nolan |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This a social security disability case. Cross-motions for summary judgment are pending. The Court has carefully reviewed the administrative record. For the reasons that follow, Plaintiff's Motion for Summary Judgment [12-1] is denied, and the Commissioner's Motion for Summary Judgment [13-1] is granted.

## BACKGROUND

Plaintiff Yolanda Santoyo alleges disability since December 31, 2002 because of epilepsy. (R. 76-77). She was born on July 2, 1953 and was 50 years old at the time of the hearing on October 14, 2003. (R. 56, 138). Santoyo speaks only Spanish. (R. 139). Santoyo reported that she completed one year of high school in Mexico. (R. 81, 139). Her past work includes work as a cleaning lady in a health club and an inspector in a factory. (R. 77). As an inspector, Santoyo inspected television sets and their parts and components. Id.

Santoyo stated that her condition first bothered her on September 27, 2002. (R. 77). On that date, Santoyo experienced a seizure at work and was taken to the emergency room at St. Francis Hospital. (R. 104-110). At St. Francis Hospital, Santoyo reported that she had not had a seizure for over a year. (R. 105). A CT scan of her brain on September 27, 2002 found no evidence of acute

intracranial hemorrhage or mass. (R. 109). Santoyo has not been to a hospital or emergency room for a seizure since September 27, 2002. (R. 140).

Santoyo reported that she stopped working on January 3, 2003 because: "I had a seizure at work and was injured. I was let go because of frequent spells. I could no longer do the work." (R. 77). In February 2003, a state agency reviewing physician reviewed Santoyo's records and opined that she remained capable of lifting twenty-five pounds frequently and fifty pounds occasionally. (R. 113). He opined that she could stand and/or walk for six hours in an eight-hour workday and sit for the same time. Id. He further opined that she should never climb ropes/scaffolds and should avoid concentrated exposure to hazards (machinery, heights, etc.) due to her history of seizures. (R. 114, 116). The physician noted that although Santoyo had a history of seizures and was treated once at St. Francis Hospital, her treating physician reported that she took her medication with no more seizure activity. (R. 119).

At the hearing on October 14, 2003, Santoyo's counsel stated that she was currently taking Carbamazepin and Phenobarbital to control her seizures and Synthroid for her thyroid problem. (R. 140-41). Santoyo testified that she experiences seizures once or twice a month during which she bites and scratches herself and the side effects of the seizures last for several days. (R. 142). She stated that she cleans the house and sometimes does dishes. (R. 144). Santoyo will not cook or bathe when home alone because she fears having a seizure. Id.

The ALJ applied the five-step analysis of 20 C.F.R. § 404.1520(a)(4)(i)-(v) and found that Santoyo had not engaged in substantial gainful activity since the alleged onset of disability (step one); that her seizure disorder was a severe impairment (step two); but that it did not qualify as a listed impairment (step three). The ALJ determined that Santoyo retained the residual functional

capacity (RFC) to perform medium exertional work with the exception of climbing ladders, ropes, or scaffolds and avoiding concentrated exposure to open heights and hazardous machinery.[1] The ALJ concluded that Santoyo was able to perform her past relevant work as an inspector or porter (step four).

## **DISCUSSION**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently gainfully employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is able to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520 (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, it is determined that he or she can also do sedentary and light. 20 C.F.R. § 404.1567(c).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ denied Santoyo's claim at Step 4, finding that she retains the residual functional capacity to perform a limited range of medium work. Santoyo raises two main challenges to the ALJ's decision: (1) the ALJ failed to evaluate her convulsive disorder properly under the relevant listings and (2) the ALJ selectively discussed evidence that favored the ultimate decision of no disability. Neither of Santoyo's arguments warrant a reversal or remand.

Santoyo first challenges the ALJ's finding that her condition did not equal in severity a listed impairment. Substantial evidence supports the ALJ's finding that Santoyo's impairment is not medically equivalent to a listed impairment. Section 11.02, which applies to convulsive epilepsy, requires seizures occurring more frequently than one a month despite 3 months of prescribed treatment. Section 11.03, which applies to nonconvulsive epilepsy, requires seizures occurring more frequently than one weekly despite 3 months of prescribed treatment. The ALJ found that Santoyo did not satisfy the frequency criteria of the listings because "[t]he medical record contains only one documented example and treatment of a seizure that claimant has experienced." (R. 16). The ALJ discredited Santoyo's testimony about the nature of her impairments and the effects they have on her residual functional capacity. (R. 17). An ALJ's credibility determination is entitled to "special

deference" and will be reversed only if it is "patently wrong." Scheck v. Barnhart, 357 F.3d 697, 703 (7th Cir. 2004); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's credibility determination was not patently wrong.[2]

The record is conflicting as to how often Santoyo's seizures occur: Santoyo's testimony, which if accepted would provide support for a finding that she met the frequency requirement of listing 11.02, and Dr. Gonzalez's treatment notes and February 5, 2003 opinion, which were sufficient ground for finding that she did not. Santoyo's testimony as well as her husband's and brother's statements about the frequency of her seizures is not consistent with the medical record. The ALJ noted the inconsistency between the records and Santoyo's testimony. (R. 15). Santoyo's husband and brother reported that she has seizures more than once per month. (R. 94-95). Santoyo testified that she has one or two seizures a month. (R. 142). Santoyo further testified that she saw Dr. Gonzalez "every month" and reported the frequency of her seizures to Dr. Gonzalez. (R. 140).

Dr. Gonzalez's treatment notes do not support Santoyo's testimony that she saw him every month nor do they confirm the frequency of seizure episodes indicated by Santoyo. Between January 2002 and September 2003, Santoyo saw Dr. Gonzalez on four occasions (5/12/02; 9/30/02; 1/7/03; 8/17/03). (R. 124-26). Thus, Santoyo saw Dr. Gonzalez twice a year, not monthly. Other than the September 27, 2002 seizure, Dr. Gonzalez's notes mention seizures on only two occasions

---

[2] Santoyo correctly points out that the ALJ failed to mention the specific listings under which she considered Santoyo's impairments. Although the ALJ should have mentioned the listings by name, her reason for finding that Santoyo does not have an impairment that meets or equals an impairment found in the Listing of Impairments–the medical record fails to confirm any seizures subsequent to September 27, 2002–allow the Court to adequately infer that she applied the relevant listings and provides substantial evidence for her Step 3 determination. Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) (holding that the ALJ must discuss the listing by name, but giving the ALJ the benefit of the doubt it could be inferred from his written decision that he correctly recognized the applicability of the relevant listing.).

in almost 4 years. On January 6, 2001, Dr. Gonzalez noted that there was a "possibility of convulsions." (R. 124). On August 19, 2003, Santoyo reported to Dr. Gonzalez that she was having seizures "on and off." Id.[3] In stark contrast, the remainder of Dr. Gonzalez's records do not confirm any seizure activity. In fact, on July 31, 1999, April 29, 2000, July 5, 2001, October 20, 2001, and May 13, 2002, Santoyo reported to Dr. Gonzalez that she was having no convulsions. (R. 122, 123, 125). On September 27, 2002, Santoyo had a seizure that required medical treatment and she told the doctor this was the first seizure she had in more than a year. (R. 105).

On February 10, 2003, Santoyo's husband reported that he had witnessed more than 153 seizures. (R. 95). If Santoyo's husband had witnessed 153 seizures, either 152 of them were prior to January 6, 2001 or during the short time period between September 28, 2002 and February 2003. Strikingly, on January 7, 2003, Santoyo failed to report any convulsions to Dr. Gonzales. Yet, Santoyo's brother and husband both reported that she had a seizure the day before. (R. 94, 95, 126). Santoyo's brother reported seizures on November 27, 2002, December 28, 2002, and January 6, 2003. (R. 94). He stated that she lost consciousness for twenty-to-thirty minutes during a seizure. Id. It is reasonable to think that Santoyo would have mentioned these recent seizures witnessed by her brother to Dr. Gonzalez when she saw him on January 7, 2003 and he would have reflected the seizure activity in his notes. Dr. Gonzalez's notes do no reflect any such comments. In February 2003, Dr. Gonzalez reported only one incident that could be considered a seizure (September 27, 2002) and stated that after that incident "she has been doing okay" and "has been taking the medication with no more other convulsive problems." (R. 111).

---

[3] Despite Santoyo's report of having convulsions "on and off," Dr. Gonzalez noted "no specific findings" and simply continued her medication with no changes. (R. 124, 141)

The ALJ properly relied on the lack of reported seizures to Dr. Gonzalez as evidence that Santoyo's seizures were not frequent enough to equal the relevant listings because Santoyo explicitly testified that she reported the frequency of her seizures to Dr. Gonzalez. (R. 140). In light of the conflicting evidence, the ALJ could conclude that Santoyo's testimony regarding the frequency of her seizures was not credible.[4] Wolfe v. Shalala, 997 F.2d 321, 326 (7th Cir. 1993) (holding that a court may not reweigh evidence or reconsider an ALJ's credibility determination unless those determinations are patently wrong).

As properly noted by the ALJ, the laboratory reports of September 27, 2002 showed that Santoyo's Dilantin and Phenobarbital levels were below the therapeutic range. (R. 16, 108). Santoyo makes much of the fact that the ALJ noted her sub-therapeutic blood level on September

---

[4] As part of her Step 3 analysis, the ALJ also concluded that Santoyo's medication treatment was successful because Dr. Gonzalez stated in his February 5, 2003 report that Santoyo had discontinued both Dilantin and Phenobarbital. (R. 16). The ALJ also stated: "The claimant's treating physician, Dr. Carlos Gonzalez, wrote a letter concerning the claimant, based on an examination of January 7, 2003 . . . . He also noted she had been taking Tegretol and Phenobarbital, but that these medications were discontinued." (R. 14). The ALJ misstated the record in this regard. Dr. Gonzalez indicated that Santoyo continued, not discontinued, her medications. In his February 5, 2003 report, Dr. Gonzalez stated: "This is a patient who saw me for the first time in 09/99. She came with a history of thyroid problems and also convulsions. She had been taking Tegretol and Phenobarbital already for some time. *The medication was continued*." (R. 111) (emphasis added). Further, on January 8, 2003, Santoyo reported taking Carbamazepine and Phenobarbital to control her seizures. (R. 80). On May 8, 2003, Santoyo reported that she was then taking Tegretol, Phenobarbital, and Synthroid. (R. 35, 102). At the hearing on October 14, 2003, Santoyo's attorney reported that she was taking Phenobarbital, Synthroid, and Carbamazepin. (R. 141). The ALJ's misstatement regarding Santoyo's discontinuation of medication is harmless because the remainder of the ALJ's Step 3 determination (i.e., that Santoyo's seizure activity did not meet the frequency requirements of the relevant listings) is supported by substantial evidence. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (stating "[s]o the administrative law judge's opinion is vulnerable. But that is nothing new. No principle of administrative law or common sense requires us to remand a case in quest of the perfect opinion unless there is reason to believe that remand might lead to a different result.").

27, 2002 but supposedly failed to mention two blood tests which indicated therapeutic levels. Pl's Memo. at 5-6. This argument gets Santoyo nowhere. Santoyo cites to blood test results at page 127 of the record, but that test is dated September 14, 2000. There was no reason for the ALJ to discuss this test result because it was more than two years prior to Santoyo's alleged onset date. The other test Santoyo cites is the test performed while she was hospitalized on September 27, 2002, which the ALJ did discuss. (R. 14, 16, 108, 110).

Santoyo asserts that the ALJ failed to follow Social Security Ruling 87-6. Pl's Memo. at 6. The basis for this argument is not clearly articulated nor sufficiently developed. Santoyo appears to claim that the ALJ did not properly evaluate her seizure disorder because she failed to solicit further evidence from Dr. Gonzalez or consult a medical expert. "An ALJ has an obligation to develop a full and fair record." Howell v. Sullivan, 950 F.2d 343, 348 (7th Cir. 1991). An ALJ shall recontact a claimant's treating physician when his opinion "contains a conflict or ambiguity that must be resolved [or] the report does not contain all the necessary information . . . ." 20 C.F.R. § 404.1512(e). Santoyo suggests that the ALJ should have recontacted Dr. Gonzalez "to solicit further evidence [regarding his] ambiguous report of ongoing seizures." Pl's Memo. at 6. There is nothing conflicting or ambiguous about Dr. Gonzalez's February 7, 2003 report of Santoyo's condition. Dr. Gonzalez's report clearly indicates that Santoyo's seizure activity was under control with medication. (R. 111). The ALJ did not err when she failed to recontact Dr. Gonzalez to request further information regarding Santoyo's seizure activity.

Santoyo's argument that the ALJ failed to consider an expert's opinion on whether her impairment equals a listing is also without merit. The record contains two SSA-831-C3 Disability Determination and Transmittal Forms, the most recent dated April 16, 2003, signed by two physicians,

finding Santoyo not disabled. (R. 19, 21). These opinions satisfy the ALJ's requirement to receive an expert opinion regarding equivalency. Blue v. Massanari, 2001 WL 1112669, at * 6 (S.D. Ind. Aug. 6, 2001).

Santoyo additionally argues in a cursory fashion that the ALJ improperly noted that Santoyo did not recall seeing a neurologist and that Dr. Gonzalez had not changed her medications or dosage in more than a year. (R. 15). Santoyo claimed to suffer one to two seizures per month during which she bites and scratches herself with side effects lasting for days, but her medical treatment has been routine, conservative, and infrequent. Santoyo's treatment efforts and medications are relevant in assessing credibility. Social Security Ruling 96-7p instructs an ALJ must consider many factors, including the treatment the individual has received and the effectiveness of medication, in assessing a claimant's credibility. See SSR 96-7p (noting that [p]ersistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications . . . [and] referrals to specialists . . . generally lend support to an individual's allegations of intense and persistent symptoms."). The fact that Santoyo did not recall seeing a neurologist and did not have her medication regime adjusted or changed in more than a year supports the ALJ's credibility finding. If her medications were not controlling her seizures, it is reasonable to assume that Santoyo would have been referred to a specialist and/or her medication regime would have been adjusted due to ineffectiveness. See SSR 87-6 (noting that medical advances have made it possible to more precisely "tailor" anticonvulsant drugs to the patient's needs and due to these advances, "most epileptic seizures are controllable and individuals who receive appropriate treatment are able to work.").

Santoyo next argues that the ALJ selectively discussed evidence which favored the ultimate decision of non-disability and ignored evidence that supported her claim. Santoyo faults the ALJ

for failing to mention that Dr. Gonzalez attributed her termination from work to her September 27, 2002 seizure and that a co-worker observed the seizure. Pl's Memo. at 3. This argument seems to misapprehend the ALJ's decision. The ALJ did not, as Santoyo implies, question the September 27, 2002 seizure. Rather, the ALJ explicitly found that the medical record documented treatment of a seizure Santoyo experienced in September 2002. (R. 16).

Santoyo also asserts that the ALJ provided an incomplete version of Dr. Gonzalez's opinion. The ALJ noted that Dr. Gonzalez stated that Santoyo could be trained to do other work. (R. 14, 17). In his February 5, 2003 report, Dr. Gonzalez stated that Santoyo "was terminated from the previous work that she had. If she doesn't have any convulsions, she is trainable to do other work, it will be the first thing that should be done to retrain her to be able to continue working. If that is not possible the patient could be declared disabled on the basis of the compulsive disorder and difficulty finding employment due to her diagnosis and condition because people do not want to hire her." (R. 111). The ALJ accurately summarized Dr. Gonzalez's opinion. The ALJ found that Santoyo's testimony regarding the frequency of her seizures was not credible. (R. 17). The ALJ noted that Dr. Gonzalez reported that she was "doing okay" since her September 27, 2002 seizure. (R. 14). Dr. Gonzalez further reported that Santoyo had "been taking the medication with no more other convulsive problems." (R. 111). Because Santoyo's seizures were under control with medication, the ALJ properly relied on Dr. Gonzalez's opinion that she could be retrained if she was not having any convulsions.

The ALJ did not err in disregarding Dr. Gonzalez's opinion that Santoyo should be found disabled if she cannot be retrained "on the basis of the compulsive disorder and difficulty finding

employment due to her diagnosis and condition because people do not want to hire her." (R. 111). A claimant is not disabled simply because his treating physician says so. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Id. (quoting Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985)). Despite his statement that Santoyo should be found disabled on the basis of her convulsive disorder if she could not be retrained, Dr. Gonzalez did not issue any specific work-related restrictions based on her condition. Moreover, Dr. Gonzalez's opinion that employers would not want to hire Santoyo is not relevant even if true. The disability determination is based on Santoyo's ability to perform jobs rather than her ability to obtain them. 20 C.F.R. § 404.1566(c) (stating inability to obtain work because of the hiring practices of employers does not render a claimant disabled). The ALJ need not consider whether Santoyo would actually be hired by an employer. Wright v. Gardner, 403 F.2d 646, 647 (7th Cir. 1968) (holding "that a claimant for insurance benefits under the Act is not disabled within the meaning of the statute merely because he would not actually be hired for such work.").

Santoyo faults the ALJ for failing to mention her husband's, brother's, and a co-worker's seizure description forms as evidence of seizure activity after September 27, 2002. (R. 94-96). Santoyo's brother and husband reported that she has seizures more than once a month. (R. 94, 95). Santoyo's brother identified seizures on November 27, 2002, December 28, 2002, and January 6, 2003. (R. 94). He indicated that he had witnessed thirty or more seizures. Id. Santoyo's husband reported that he observed seizures on February 1, 2003, February 5, 2003, and January 6, 2003. (R.

95).[5] He also reported that he had witnessed over 153 seizures. Id. The co-worker reported that she witnessed Santoyo's seizure on September 27, 2002 and that Santoyo had one or less seizures per month. (R. 96).

The ALJ did not err by failing to mention the brother's, husband's, and co-worker's seizure descriptions forms. The ALJ need not provide a written evaluation of each piece of evidence in the record. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). Rather, the ALJ must minimally articulate her analysis of the evidence so that this Court can follow her reasoning. Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004). ALJ Bretthuaer provided the minimal level of articulation required. The ALJ provided an adequate explanation for her finding that the objective medical evidence did not support Santoyo's claim regarding the nature of her seizure disorder and any resulting limitations. The ALJ's decision reflects how she resolved the conflict between Santoyo's testimony regarding the frequency of her seizures and the objective medical record. This is sufficient to allow the Court to "trace the path of [her] reasoning." Diaz, 55 F.3d at 307. The ALJ's reasoning applies to Santoyo's brother's, husband's, and co-worker's supporting statements regarding the frequency of her seizures. Discussion of their statements was not required because there is no reason to believe that the ALJ would have afforded her husband's, brother's, and co-worker's corroborating statements regarding the frequency of seizures any more weight than Santoyo's testimony. Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1998) (determining ALJ did not err by declining to address claimant's brother's testimony because ALJ found claimant's testimony regarding disabling pain and limitations untenable and therefore, "necessarily found [his brother's] supporting testimony

---

[5] As noted, despite her brother's and husband's statements that she suffered a seizure on January 6, 2003, Santoyo did not report the seizure to Dr. Gonzalez on January 7, 2003. (R. 126).

similarly not credible); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (holding ALJ did not error in failing to discuss the claimant's wife's testimony "which essentially corroborated [claimant's] account of his pain and daily activities).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary Judgment is granted. Pursuant to sentence four of 42 U.S.C. 405(g), the ALJ's decision is affirmed. The Clerk is directed to enter final judgment in favor of the Commissioner and against the Plaintiff in accordance with Rule 58 of the Federal Rules of Civil Procedure.

E N T E R:

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: April 4, 2006**